(No. 46318.—

H. F. PHILIPSBORN & CO., Appellant, v. MORRIS SU-SON *et al.,* Appellees.)

*Opinion filed Nov. 27, 1974.—Rehearing denied Jan. 28, 1975.*

Edward I. Rothschild, Donald E. Egan, and Joseph D. Della Maria, Jr., of Chicago (Rothschild, Barry & Myers, of counsel), for appellant.

L. Louis Karton, of Chicago, for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendants, North Shore Estates, Inc. (hereafter Estates), and Morris Suson (hereafter Suson) appealed from judgments of the circuit court of Cook County entered upon jury verdicts in favor of plaintiff, H. F. Philipsborn & Co. One judgment was entered in favor of plaintiff and against both defendants in the amount of

$109,760 and the other in favor of plaintiff and against defendant Suson in the amount of $30,000. Plaintiff cross-appealed from judgments entered on verdicts directed in favor of Suson, Prudential Insurance Company of North America and Max E. Miller & Sons, Inc., on a third count of its complaint. The appellate court affirmed the judgments entered on the directed verdicts, affirmed the judgment entered against Estates and reversed both of the judgments entered against Suson. (14 Ill. App. 3d 775.) We allowed plaintiff's petition for leave to appeal. Plaintiff did not seek leave to appeal from that portion of the appellate court decision which affirmed the judgments entered in favor of Prudential and Miller.

The testimony shows that plaintiff was an Illinois corporation engaged in the business of mortgage banking and that it had previously financed two apartment projects for Suson, a real-estate developer. Following several discussions between Suson and officials of plaintiff concerning financing for a proposed real-estate development, an application in the name of Estates, for a construction and mortgage loan, was prepared by plaintiff. The application, prepared on a printed form, was signed "North Shore Estates, Inc., by Morris Suson Pres." It stated that Estates applied for a "construction and permanent first mortgage loan" in the amount of $5,488,000. The following words were printed on one line of the loan application form: "Title to be in the name of." In a space following those words there was typed "Trust to be formed." Immediately following, printed in ink, appeared the words "or corporation to be formed." The parties agree that this last addition was printed by Suson. The application also provided that acceptance by plaintiff within 60 days "shall constitute a binding contract to make said loan" and that "In such event we agree to pay you a commission equal to 2% of the loan."

The testimony shows that while the parties were discussing a performance bond and other matters relating

to the loan Suson applied to another mortgage banker for a construction and mortgage loan on the same project. This application was for a larger principal amount at a lower interest rate. This second application was accepted, and sometime thereafter, when plaintiff sent Estates the mortgage documents and the note to be executed, they were returned unsigned.

The loan application, which consisted of two printed pages and a one-page typewritten "Rider," contained provisions concerning, *inter alia,* interest rates, amortization schedules and prepayment privileges and premiums. It provided for the erection of the improvements in three sections, designated A, B, and C, and set forth the stages of the completion of those sections when the mortgage funds would be disbursed. The printed portion of the loan application contained a provision for the deposit of a standby fee, and in the space provided for the insertion of the amount of the fee there appeared the typed words "See attached rider." The rider provided that "In lieu of a standby fee, Morris Suson will execute and deliver 3 demand judgment notes, each in the amount of $10,000.00, payable to you without interest. Upon the opening of the loan in each section, one of said notes is to be cancelled and returned to us."

The record reflects that Suson executed three notes payable to the order of plaintiff, each being in the principal amount of $10,000, payable on demand and providing for no interest. Each note bears the legend "This note is subject to application dated September 17, 1963, under all the terms and conditions under such application."

The judgment in the amount of $109,760 was entered on the count in plaintiff's complaint which sought to recover the 2% commission due upon acceptance of the loan. The judgment in the amount of $30,000 was entered on plaintiff's count based on the three promissory notes executed by Suson. The issues concerning a third count of

plaintiff's complaint, on which the verdicts were directed, will be discussed later.

To place the issues in proper perspective it becomes necessary to first consider Suson's contention that the loan application was not accepted. Regarding this matter it suffices to say that in the posture in which this case was submitted to the jury acceptance was one of the issues for its determination; the jury decided the question in favor of plaintiff and the finding is amply supported by the evidence.

Plaintiff concedes that it intended Estates to be the obligor on the loan application and that the application, of itself, imposed no individual liability on Suson for the payment of its commission. It contends, however, that Estates, which purportedly applied for the loan, did not, at the time of the application, exist as a corporate entity, and that plaintiff, at that time, was not aware of that fact. The record shows that on September 17, 1963, when the application was signed, there was no corporate entity named North Shore Estates, Inc. It was incorporated on November 12, 1963, with a paid-in capital of $1,000 and with Suson as the sole shareholder and director. The corporate minutes reflect that the Board of Directors "approved and adopted all acts of Morris Suson to date and assumed liability therefor."

It is plaintiff's theory "that in the absence of a knowing agreement to the contrary" Suson, as the promoter of Estates, "is personally liable on a pre-incorporation contract and is not released by subsequent incorporation and ratification of the contract." It argues that "The general rule concerning promoters' contracts is that the promoter will be personally liable on contracts signed on behalf of a non-existent corporation unless the contract provides to the contrary." The record shows that the circuit court admitted testimony on the question whether plaintiff knew that Estates was not in existence when the application was executed. This testimony was

admitted on the theory that the language "or corporation to be formed" which appeared on the line on which were printed the words "Title to be in the name of" was ambiguous as to whether the corporation to be formed was North Shore Estates, Inc., the applicant for the loan, or a corporate titleholder mortgagor. Plaintiff contends that the question whether it was unaware of the nonexistence of Estates was properly submitted to the jury and that the appellate court erred in holding that the verdict was against the manifest weight of the evidence.

The parties to this appeal appear to be in agreement that, unless the parties to the transaction agree otherwise, an individual who conducts the ordinary affairs of a business in the name of a nonexistent corporation is personally liable, both at common law (*Bigelow v. Gregory,* 73 Ill. 197), and by statute (Ill. Rev. Stat. 1973, ch. 32, par. 157.150), on contracts made in connection with the business. However, the authorities dealing with a promoter's personal liability on contracts made for the benefit of a proposed corporation present a wide array of factual situations and many so-called general rules. (See Annot., 41 A.L.R.2d 477 (1955), for an extensive collection of cases dealing with "Personal liability of promoter to third person on or with respect to contract made for corporation or in aid of promotion.") A number of the decisions of this court and the appellate court are relevant to the liability of persons who exercise corporate powers without authority (see 1 Illinois Business Corporation Act Annotated 462-465 (2d ed. 1947); S.H.A., ch. 32, par. 157.150, at 575), but none deal with the precise issue here presented. A number of the decisions of the courts of review of other jurisdictions state that where a promoter had become liable on a pre-incorporation contract, he was not, in the absence of an agreement to that effect, discharged from liability merely because the corporation was later organized and ratified the contract. (See cases cited in 18 Am. Jur. 2d *Corporations* sec. 131 (1965), and

Annot., 41 A.L.R.2d 477, 512-515 (1955).) We have examined these cases and find that, in many, either the statement was *dicta* (see, *e.g., King Features Syndicate v. Courrier* (1950), 241 Iowa 870, 43 N.W.2d 718, 41 A.L.R.2d 467, the corporation was never formed), the contract was in the name of the promoter (see, *e.g., Mansfield v. Lang* (1936), 293 Mass. 386, 200 N.E. 110), or the rule was not applied. See, *e.g., Strause v. Richmond Woodworking Co.* (1909), 109 Va. 724, 65 S.E. 659.

We find the facts of *Whitney v. Wyman,* 101 U.S. 392, 393, 25 L. Ed. 1050, 1051, similar to those of this case and the reasoning more persuasive. In that case a letter was sent to Baxter Whitney stating, "Our company being so far organized, by direction of the officers, we now order from you ***" certain machinery and was signed "Charles Wyman, Edward P. Ferry, Carlton L. Storrs, Prudential Committee Grand Haven Fruit Basket Co." Baxter, in a letter addressed to the Grand Haven Fruit Basket Co., accepted the order for the machinery. The machinery was delivered but Baxter's sight draft on Wyman, Ferry and Storrs was protested because it was addressed to them individually. The letters of order and acceptance were dated February 1, 1869, and February 10, 1869, respectively, which was before the articles of incorporation were filed with the Secretary of State and the county clerk and, therefore, before the corporation was authorized to do business. Whitney filed an action against Wyman, Ferry and Storrs, individually, to recover the value of the machinery.

The rule applied by the court was that whether liability will be imposed upon the promoter depends upon the intent of the parties. It found from the exchange of letters "that both parties understood and meant that the contract was to be and, in fact, was with the corporation, and not with the defendants individually." (101 U.S. at 396, 25 L. Ed. at 1052.) In response to the argument that this intent could not be given effect because the corpora-

tion was forbidden to do any business when the letters were written, the court said: "The corporation subsequently ratified the contract by recognizing and treating it as valid. This made it in all respects what it would have been if the requisite corporate power had existed when it was entered into." 101 U.S. at 396-397, 25 L. Ed. at 1052.

In our opinion, insofar as the loan commission and the notes executed by Suson and delivered in lieu of the standby fee were concerned, the question whether there was acceptance of the loan application, and one other issue discussed later in this opinion, were the only issues of fact for determination by the jury. A contract is to be construed to give effect to the intent of the parties (*Martindell v. Lake Shore National Bank,* 15 Ill.2d 272), and effect must be given to the contract as written and any documents executed contemporaneously therewith (*Illinois Match Co. v. Chicago, Rock Island and Pacific Ry. Co.,* 250 Ill. 396). In this transaction, so far as this record reflects, plaintiff required no showing of Estates' assets nor did it make any inquiry concerning its solvency. Estates was organized within 60 days of the execution of the loan application, and upon its approval and adoption of Suson's acts to date, and its assumption of liability for those acts, plaintiff had received everything for which it had bargained. The record shows that when the loan application was signed Suson had an option to acquire, but did not own, the land on which the proposed project was to be built, and that upon acquisition title was to be taken in either a trust or corporation, in either event, not in existence, but "to be formed." Clearly, under these circumstances, plaintiff looked only to Estates for its commission, and the fact that Estates had not at that time been formed furnished no basis for the imposition of personal liability on Suson for the payment of the loan commission. In contrast, plaintiff required, and Suson executed and delivered in lieu of the standby fee, notes on which he was personally liable. On this record, we hold

that whether or not Estates existed as a corporate entity at the time the application was executed, or whether plaintiff knew that it was not, was not controlling, and that although we do not agree with its rationale, the appellate court correctly reversed the judgment entered against Suson in the amount of $109,760.

We do not agree with the appellate court that the circuit court erred in entering the judgment against Suson based on the promissory notes. Here, too, the intent of the parties is clear. The purpose of depositing the notes in lieu of the standby fee was to obtain the commitment from the lender that the mortgage funds would be made available in accordance with the terms of the loan agreement. The record shows that such commitment was obtained, and when Estates breached its agreement to borrow the money thus committed, plaintiff was entitled to demand payment of the notes. We have considered Suson's contentions that there was no consideration for the standby fee and that it cannot be recovered by plaintiff for the reason that it was a penalty, and not liquidated damages, and find them to be without merit. Except for the provision contained in the notes that they are subject to the terms and conditions of the application, they are in the usual form of promissory notes and contain the usual cognovit clause, and there is nothing in the record which serves to relieve Suson of personal liability to pay them. We have also considered his contention that plaintiff breached the loan agreement by reason of its alleged failure to procure a performance bond. The answer to this last contention is that the question of plaintiff's breach of the contract was submitted as a fact issue to the jury, was resolved in plaintiff's favor, and the finding is supported by the evidence. We hold that in reversing the judgment against Suson in the amount of $30,000 the appellate court erred.

We turn now to plaintiff's contention that the circuit court erred in directing a verdict in favor of Suson on the third count of its complaint and that the appellate court

erred in affirming the judgment entered on the directed verdict. This count was predicated on the theory that Suson, as sole shareholder and director of Estates, had tortiously induced Estates to breach its loan agreement with plaintiff. In affirming the judgment the appellate court held that plaintiff failed to show that Suson had induced Estates to breach the contract and that under the authority of *Pedrick v. Peoria and Eastern R.R. Co.*, 37 Ill.2d 494, the circuit court did not err in directing a verdict.

Since *Doremus v. Hennessy*, 176 Ill. 608, decided in 1898, there has been no question in this jurisdiction that the tortious inducement of breach of contract will give rise to an action for damages. It is equally clear however that a corporate officer may, for a proper business purpose and in good faith, influence the actions of the corporation. (*Loewenthal Securities Co. v. White Paving Co.*, 351 Ill. 285.) In order to recover from Suson on the theory here advanced, plaintiff was required to show that Suson acted either without justification or maliciously, and this it failed to do. The evidence shows that he obtained a loan for more money at a lower interest rate and fails to show that he acted by reason of malice or for any unlawful purpose. The circuit court did not err in directing a verdict in favor of Suson.

For the reasons stated the judgment of the appellate court insofar as it reversed the judgment entered by the circuit court against Suson in the amount of $30,000 is reversed, and in all other respects the judgment of the appellate court is affirmed.

*Affirmed in part and*
*reversed in part.*