APPLEGATE-LEASON AND COMPANY, Plaintiff and Counterdefendant, *v.* JOSEPH REILLY *et al.*, Defendants.—(JOSEPH REILLY, Counterplaintiff and Third-Party Counterdefendant-Appellee; JULIAN BISLUK *et al.*, Third-Party Plaintiff and Counterdefendant; ROGERS PARK-PRUDENTIAL SAVINGS AND LOAN ASSOCIATION, Third-Party Defendant and Counterplaintiff-Appellant.)

First District (2nd Division)   No. 76-593

Opinion filed June 6, 1978.

Gomberg and Sharfman, Ltd., of Chicago (Lawrence A. Gold, Robert J. Sharfman, David L. Gomberg, and Raymond J. Ostler, of counsel), for appellant.

Speranza and Veverka, of Chicago (Richard S. Rosen, of counsel), for appellee.

Mr. JUSTICE BROWN delivered the opinion of the court:

Appellant Rogers Park-Prudential Savings and Loan Association (hereinafter Rogers Park) appeals from an order of the circuit court of Cook County denying its counterclaim for the balance of a service charge specified in the loan application of appellee Joseph Reilly and his wife, Marie (hereinafter Reillys).

Joseph Reilly (hereinafter Reilly) intended to purchase improved real estate from Julian and Josephine Bisluk (hereinafter Bisluks) and deposited $15,000 earnest money with Applegate-Leason and Company (hereinafter Applegate-Leason), the real estate broker. On July 20, 1973, the Reillys applied for a first mortgage loan with Rogers Park by executing Rogers Park's printed loan application form, which form provides in pertinent part:

"The applicant * * * understands that the note, mortgage and assignment of rents must be executed, and recorded or filed, within thirty days after being notified that the loan is accepted. * * *
   * * *

Applicant further agrees to pay or reimburse the Association for the payment of all necessary expenses or advances made or incurred for a Mortgage Guaranty Policy, Torrens Certificate, recording charges, taxes due, unpaid interest, appraisal charges, attorney fees and service charges for examination of title and for handling details to negotiate said loan, all of which amounts may be deducted from any loan obtained (if not previously paid).

If the applicant at any time before completion decides that he does not wish the loan he shall pay or reimburse the Association for all expenses, charges, fees, taxes and interest, as may have been incurred or paid up to the time notice of such decision has been given by the applicant to the Association. *The service charge provided for below shall be incurred (at the option of the Association) in the event applicant is given a commitment for the loan applied for herein, and does not complete the loan within 30 days after said commitment.*
   * * *

*The applicant agrees to pay the Association (if not previously paid) an appraisal and credit report fee of _____ and a service charge of _____.*" (Emphasis added.)

Inserted in script in the "credit report fee" and "service charge" blanks of the loan application were the amount of "$50.00" and "$2,310.00," respectively. A loan commitment was issued by Rogers Park and received by the Reillys and $500 was paid to Rogers Park by the Reillys. The record

does not reveal the length of the commitment nor the date of payment of the $500. On January 2, 1974, the Reillys executed their note in the amount of $115,000 and a mortgage to secure the note. The mortgage document was recorded in the office of the Recorder of Deeds of Cook County on January 17, 1974.

The real estate transaction between Reilly and the Bisluks was not completed. Applegate-Leason filed a complaint of interpleader. Reilly filed a "cross-complaint" to regain the $15,000 earnest money. The Bisluks filed a "cross-complaint" against Rogers Park, therein alleging that the recorded mortgage clouds their title and praying that the court direct Rogers Park to release the mortgage and cancel the note and mortgage. Rogers Park answered and counterclaimed against Reilly and the Bisluks. In its answer, it denied that it refused to remit the money to the Reillys so that they could close the transaction with the Bisluks; further, that it received a partial payment of consideration for the standby commitment to Reilly, that its additional expenses and loss amount to $21,068.50, and that it will release the mortgage when it is paid all sums due and owing it by Reilly. In its counterclaim, it alleged that it was entitled to receive $2,310 from Reilly as a loan commission, that it incurred additional actual expenses of $358.50 in connection with title reports and that it kept the sum of $115,000 available to honor the commitment made to Reilly for a period in excess of 90 days. In his answer to the counterclaim, Reilly alleged that he paid Rogers Park $500 as and for a loan standby fee covering any and all costs Rogers Park may have.

At trial, the parties stipulated that all claims between Reilly, the Bisluks, and Applegate-Leason would be released and dismissed with prejudice; that Applegate-Leason would return the $15,000 earnest money to Reilly and that the existing mortgage against the real estate would be released of record.

As to the counterclaim of Rogers Park, Rogers Park's counsel stated that Rogers Park paid $86 for a title bill and $50 for a credit report. He made an offer of proof that a vice-president of Rogers Park would testify that Rogers Park spent approximately 42 hours in connection with the loan and that this time was worth $2,528.75. The following exchange then occurred:

> "THE COURT: All right. Let the record show that that offer is made and refused, and that the Court would adjudicate the claim of Rogers Park Savings and Loan on the stipulated facts which are that a loan commitment was applied for and received; that $500 was paid in connection therewith; that a little over $100 was expended in actual costs; and that the association stood ready, willing, and able to honor its commitment and disburse the

proceeds of the loan; but that the borrower failed to consummate the transaction.

I take it those are the stipulated facts in connection with this claim, is that correct?

ROGERS PARK'S COUNSEL: Yes, your Honor.

THE COURT: Correct?

REILLY'S COUNSEL: Correct, with the provision that the borrower failed to consummate not through his own negligence.

THE COURT: As between the contracting parties, and since I am adjudicating only the claim of Rogers Park versus the Reillys, I assume that to the extent that there may be someone liable to them for any failure to perform on their part, that is no longer before me, and that claim has been compromised."

The trial court found that the proper measure of damages was the loss of profits which would have been received had a contract been fulfilled, and the amount of the service fee was not a proper basis on which to award damages. The trial court ruled in favor of the Reillys on Rogers Park's counterclaim and denied Reilly's oral request for the difference between the $500 paid to Rogers Park and the "* * * slightly over $100 * * *" which was expended by Rogers Park.

The trial court entered a written order which: (1) dismissed with prejudice the claims between Reilly, the Bisluks, and Applegate-Leason; (2) ordered Applegate-Leason to return the $15,000 earnest money deposit plus interest to Reilly; (3) ordered Rogers Park to release the mortgage of record; (4) found in favor of Reilly and against Rogers Park on its counterclaim; and (5) denied Reilly's claim for a rebate against Rogers Park.

Rogers Park contends in this appeal that it is entitled to the $2,310 service charge less the $500 received from the Reillys. It argues that the Reillys' loan application was an invitation to Rogers Park to make an offer to lend money, that its offer was its commitment, and that the Reillys accepted the offer by executing mortgage documents and paying $500 as a downpayment towards the service charge.

Under the facts of this case, we find that Reilly is liable to Rogers Park for the amount of the service charge. The executed loan application was an offer to Rogers Park and a bilateral contract or loan agreement was formed when Rogers Park accepted by issuing its loan commitment. (See *H. F. Philipsborn & Co. v. Suson* (1974), 59 Ill. 2d 465, 322 N.E.2d 45; *Snow v. Schulman* (1933), 352 Ill. 63, 71, 185 N.E. 262; *Fleming v. Parkview Colonial Manor Investment Co.* (5th Dist. 1975), 31 Ill. App. 3d 6, 10-11, 333 N.E.2d 587.) The consideration from Reilly to Rogers Park was his promise to pay the $2,310 service charge; the consideration from

Rogers Park to Reilly was its promise to commit a specified sum of money for a specified time. (See *In re Four Seasons Nursing Centers of America, Inc.* (10th Cir. 1973), 483 F.2d 599, 601.) In this case the money actually was held beyond January 2, 1974, the date the Reillys executed the mortgage documents. When Reilly breached his agreement to borrow the money thus committed, Rogers Park was entitled to demand payment of the service charge.

In *H. F. Philipsborn*, the defendant Suson, a corporation promoter, signed a construction and mortgage loan application "North Shore Estates, Inc. by Morris Suson, Pres." Upon incorporation, Estates formally adopted all the promoter's actions and assumed liability therefore. Suson obtained a loan from another lender and returned unexecuted mortgage documents to Philipsborn. Our supreme court held that Philipsborn recover $30,000 from Suson, the amount of promissory notes he had executed and delivered to Philipsborn in lieu of a standby fee. The court stated as follows:

> "We do not agree with the appellate court that the circuit court erred in entering the judgment against Suson based on the promissory notes. Here, too, the intent of the parties is clear. The purpose of depositing the notes in lieu of the standby fee was to obtain the commitment from the lender that the mortgage funds would be made available in accordance with the terms of the loan agreement. The record shows that such commitment was obtained, and when Estates breached its agreement to borrow the money thus committed, plaintiff was entitled to demand payment of the notes. We have considered Suson's contentions that there was no consideration for the standby fee and that it cannot be recovered by plaintiff for the reason that it was a penalty, and not liquidated damages, and find them to be without merit." *H. F. Philipsborn*, 59 Ill. 2d 465, 473.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

STAMOS, P. J., and DOWNING, J., concur.