**CAPITAL HOLDING CORPORATION, Appellant,**

v.

**OCTAGON DEVELOPMENT COMPANY; Richard Justice, Michael Passidomo, William M. Johnson, Gary K. Justice, Ronald F. Mann and Ronald Hall, Appellees.**

No. 87–CA–585–MR.

Court of Appeals of Kentucky.

June 3, 1988.

Discretionary Review Denied by Supreme Court Sept. 28, 1988.

Stephen F. Schuster, Ogden & Robertson, Louisville, David C. Stratton, Stratton, May & Hays, P.S.C., Pikeville, for appellant.

Charles J. Baird, Baird and Baird, P.S.C., Pikeville, for appellees.

Before CLAYTON, HOWARD and LESTER, JJ.

LESTER, Judge.

This is an appeal from a judgment supported by findings of fact and conclusions of law entered by the court sitting without the intervention of a jury dismissing appellant's complaint for loss of profits occasioned by appellees' breach of contract.

Two businessmen and four physicians formed a partnership known as Octagon Development Company for the purpose of acquiring real estate and construction of a medical office building. In order to accomplish its aims, the partnership obtained a loan commitment through the only available source which was Capital Holding which apparently was a subsidiary of an insurance company. This was done on September, 1981, by agreement the terms of which provided that appellant would lend Octagon $3,100,000 at some time in the future at 14.5% tax free interest for a consideration of a refundable deposit of $90,000. Some four months later, the project proved to be unfeasible so the contract was cancelled and the deposit refunded.

In June, 1982, the project again appeared to be possible so appellees went back to Capital and obtained a second mortgage loan commitment for $2,000,000 at 14% tax free interest in consideration of a commitment or standby fee of $60,000. These documents were executed on August 23, 1982, and expired on November 30, 1982, with the following provision contained therein:

> *Deposit and Fee:* The payment of the deposit and fee acknowledged by the commitment Letter gives Borrower no right or option not to close the Permanent Loan. Such payment is in consideration of the expenses which Lender has incurred in considering and approving this proposed investment and which it will be required to incur in preparation for consummation of the transaction contemplated herein and in further consideration of Lender holding itself ready and willing to make the loan. If the Commitment is accepted but the Loan is not closed, Lender shall retain the refundable deposit in addition to the other fees and shall have all other remedies available at law or equity against Borrower for failure to comply with any of the terms or conditions of this Commitment. If the loan is closed, Lender will return any refundable deposit without interest to the Borrower.

The contract contained a number of clauses which proved costly to appellees so

they concluded that the project was again unfeasible but rather than abandon it they sought a less expensive loan elsewhere which they found at the Pikeville National Bank. They so notified Capital on November 30, 1982, and closed their bank loan thirty days later. It is noteworthy that from the time the commitment was signed interest rates declined sharply.

Needless to say, appellant did not refund the standby fee and brought an action for damages based upon breach of contract. Upon cross motions for summary judgment, the court entered a partial summary as to appellees' liability in which it found:

That the contract which is the subject of this litigation (Exhibit 1 to the Complaint herein) was a mutually binding bilateral contract, and not merely an option contract. *Appelgate–Leason & Co. v. Reilly*, 61 Ill.App.3d 120 [18 Ill.Dec. 499], 377 N.E.2d 1135 (1978);

That the commitment fee paid by the Defendants to the Plaintiff does not constitute liquidated damages;

That the failure of the Defendants to close the loan which was the subject matter of the commitment contract constituted a breach of contract; and

That the Plaintiff is entitled to recover such damages arising from the breach of contract as the proof may support.

At the time the foregoing was filed, it was designated as "not" a final and appealable order, but Octagon never did take a cross-appeal from that determination.

After the submission of depositions and a bench trial the court entered its final judgment dismissing the complaint and in so doing, made several findings and conclusions which formed the basis of its decision. Those were:

Prior to notifying the plaintiff of its intention to obtain financing with Pikeville National Bank, the defendants had decided to abandon the office building project due to the high interest rate in the above commitment and because it was not economically feasible under the terms of the proposed loan with the plaintiff. Had it not been for obtaining the loan with Pikeville National Bank

and Trust Company, the defendants would have abandoned the project and the office building would not have been built.

Prior to and unrelated to being informed by the defendants that they would not close the loan, the plaintiff had made an investment policy decision to invest its assets only in industrial revenue bonds secured by real estate as opposed to other tax exempt investments.

On November 30, 1982, there were investments of a tax free nature of equal yield and equal quality as the plaintiff's proposed loan to the defendants, and such investments were known to the plaintiff and the plaintiff chose not to make such investments.

The Court finds the record taken as a whole fails to support a claim for damages for alleged lost profits.

Considering the record as a whole, the Court finds the refundable deposit in the amount of $60,000 was a provision for liquidated damages and it was not within the contemplation of the parties hereto that upon the defendants failure to close the loan in question that the plaintiff would be entitled to recover lost profits.

The defendants have not asserted in this action that the $60,000 commitment fee was a penalty and have not made a claim against the plaintiff for its return. The $60,000 commitment fee is not unreasonable and shall be retained by the plaintiff as liquidated damages.

In order that a recovery may be had for lost profits, it is necessary that they be capable of proof with reasonable certainty. In the present case, the loss of future profits were not proven with a degree of reasonable certainty and, therefore, a recovery for loss profits can not be sustained.

We note an incongruity in the court's two judgments, in that in the first, it treated the deposit as unliquidated damages while in the second, it states that it is to be treated as liquidated.

At the outset, we should comment that this case assumes a certain degree of importance because it presents for the first

time in this jurisdiction the issue of how we should treat a commitment fee and should we permit a recovery for damages where the loan was not consummated. We are also aware of the potential effect of our conclusions on other types of financial transactions, i.e., the small loan where the applicant might execute a similar, although abbreviated, document.

■ Counsel have directed our attention to 93 A.L.R. 3rd 1156 which provides an annotation dealing with the enforceability of a provision authorizing a lender to charge a commitment fee. The summary contained therein points out:

> The cases involving the enforceability of a provision in a loan commitment agreement authorizing a lender to charge a commitment fee have generally held that such a provision was enforceable on the ground either that the fee constituted liquidated damages or that the fee constituted consideration for the lender's commitment or an option. There are also some cases which have held the provision for a commitment fee enforceable on grounds other than that of liquidated damages, consideration, or option, some of these holdings are based on the court's determination that the particular commitment fee was reasonable.

> The relatively few cases which have held a commitment fee provision to be unenforceable have generally turned on the fact that the lender had not fulfilled its obligations under the commitment agreement or on the fact that no binding commitment agreement had been executed.

The bulk of the cases discussed that enforce the standby fee as liquidated damages have specific provision therefor and are denominated as such in the respective contracts. This is not so in the case at bench. Turning to that portion of the treatise which supports retention of the commitment, we find that the basic and most frequent premise is that the borrower has obtained an option for which he must pay a consideration with the lender agreeing to earmark the money for the borrower's use at some future date which, in turn, means that the lender is unable to invest those funds elsewhere. One court, *D & M Development Co. v. Sherwood & Roberts, Inc.*, 93 Idaho 200, 457 P.2d 439 (1969), took a very practical approach in pointing out that by the issuance of a commitment the borrower was guaranteed a sum in the future at a specific rate of interest for a specified term. If those rates rose on the money market, it was highly advantageous for the borrower to have such an option, while if they declined he was not required to accept the loan. For this agreement, he should pay some fee and if that fee was fair within the industry standards and would not become usurious if the loan was executed then the lender was within its rights in keeping it if the commitment documents so provided.

As cited by appellee and digested in the annotation referred to above, *Goldman v. Connecticut General Life Insurance Co.*, 251 Md. 575, 248 A.2d 154 (1968), bears a particular resemblance to the case at bar, in that the standby fee was not referred to as liquidated damages and that it could be refunded if and when the loan was closed. However, in *Goldman* nothing was provided concerning the deposit in the event the transaction was never consummated. In a ruling favorable to the lender the Maryland Court treated the payment as analogous to a consideration for an option, observing that an option had been defined as a contract to keep open an offer which is what the lender contracted to do in binding itself to stand ready to lend money at some future time. We note the court did not refer to the fee as liquidated damages. The contract before us specifically provides that the fee paid was:

> ... in consideration of the expenses which Lender has incurred in considering and approving this proposed investment and which it will be required to incur in preparation for consummation of the transaction contemplated herein and in further consideration of Lender holding itself ready and willing to make the loan.

The language of the option puts into contractual words the logic of *Goldman* with which we agree.

We must now resolve the legal nature of the retained deposit for if it is in fact considered liquidated damages then the matter of additional damages would appear moot. Our Uniform Commercial Code provides for such damages at KRS 355.2–718 and they are clearly allowable in this jurisdiction, *In Re Robinson*, 49 B.R. 575 (1985), especially when so provided in a contract. *Coca–Cola Bottling Works (Thomas) Inc. v. Hazard Coca–Cola Bottling Works, Inc.*, Ky., 450 S.W.2d 515 (1970). We are confronted with the problem that the parties failed to make any designation of the deposit as any type of damages but by way of brief, appellant informs us that "[i]t is obvious that the commitment fee has made Capital whole with respect to its expenses...." This impresses us as a fee to cover the issuance of the option contract which is the *one and only* contract in this case. True enough, there is reference to a future contract to lend money but that was never consummated. Regarding the nature of the deposit, we are impressed with the language of the Missouri Court in *Continental Assurance Co. v. Van Cleve Building and Construction Co.*, Mo., 260 S.W.2d 319 (1953), involving a like situation to ours:

> By defendant's failure to complete the loan plaintiff not only lost any benefit from the effort and trouble it expended in connection with the investigation but also was deprived of the interest which would have been yielded up during the term of the loan. While the loan commitment did not specifically provide that the amount constituted liquidated damages, it is apparent to us that that was its object and purpose, and it will be enforced as such.... Ordinarily if it appears that the parties in good faith agreed upon a sum as the damages which would probably ensue if the contract should be breached, the stipulation is for liquidated damages, provided the agreement is reasonable.

Bearing in mind that Capital committed itself for approximately ninety-three days and that its deposit was $60,000 which was 3% of the total loan it never made, we, as did the court in *Continental* and the Pike Circuit Court, will enforce the retained deposit as liquidated damages.

■ Appellant urges that we should authorize additional damages in a sum equal to the amount of interest it would have earned if the second or actual loan contract would have been entered into. As a basis for this position, it relies upon the option provision that in addition to retention of the deposit it:

> shall have all other remedies available at law or equity against Borrower for failure to comply with any of the terms or conditions of this Commitment

and the particular condition it has reference to was that the "[b]orrower [had] no right or option not to close the Permanent Loan." In the first place, we declare the other remedies provision to be against public policy because the lender herein wants to be given interest which it did not earn since it never made the loan. We are not going to establish a legal mechanism whereby one party is awarded damages for doing nothing where he has adequately been compensated for his granting the option in the first place. This is especially true where we have reached our conclusion as to the liquidated damages aspect. We note in passing that it was agreed at oral argument of this cause that if the deposit was treated as liquidated damages then the matter of the interest that might be earned was moot.

One comment as to the proof of damages. Appellant submitted eight different exhibits with eight different calculations of damages, all of which involved varying factors. These elements involved several potentialities of the financial industry which may or may not be operative in the future life of the unmade loan. These were, to say the least, highly speculative.

Counsel for both parties should be complimented for their candor during arguments and the inclusion of complete copies of opinions of foreign jurisdictions in the appendices to their briefs.

So much of the first judgment as determines the deposit retention to be unliqui-

dated damages is reversed while the second judgment is affirmed.

All concur.