**TALARIA WASTE MANAGEMENT, INC., Plaintiff,**

v.

**LAIDLAW WASTE SYSTEMS, INC., Defendant.**

Civ. A. No. 92–10354–MA.

United States District Court, D. Massachusetts.

July 28, 1993.

Daniel F. Lenzo, Pappas and Lenzo, Charles M. McGowan, Boston, MA, for plaintiff.

Peter B. Ellis, Foley, Hoag & Eliot, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This case originally came before the court on a claim by Talaria Waste Management, Inc. ("Talaria"), for breach of contract and unfair trade practices allegedly perpetrated by landfill operator Laidlaw Waste Systems ("Laidlaw"). Laidlaw counterclaimed against Robert S. Gundersen ("Gundersen"), sole stockholder and president of Talaria, for business debts incurred in connection with Talaria's disposal of waste at Laidlaw's landfill. Laidlaw claimed Gundersen should be held personally liable for Talaria's debts. Both parties have since moved for partial summary judgment on the issue of Gundersen's liability. The essential facts are straightforward and undisputed.

### I

Gundersen is a "waste broker," an intermediary between independent waste haulers, on the one hand, and landfill operators such as Laidlaw on the other. A waste broker

negotiates with landfill operators for discounted dumping prices in exchange for the promise of supplying a specified minimum waste tonnage over a given period of time. In February, 1990, Gundersen approached Laidlaw to negotiate a two-year agreement for the use of Laidlaw's landfill in Plainville, Massachusetts. He signed the contract with Laidlaw on February 27, 1990, as president of Talaria Group, Inc.

Though Gundersen's company name used the word "Inc.," Talaria Group was not incorporated when the contract was signed. It was not until July 17, 1990, that Gundersen filed Articles of Organization in Massachusetts.[1] He incorporated his business under a slightly different name, Talaria Waste Management, Inc. Laidlaw billed its invoices at all times to the company name.

The Laidlaw division manager of the Plainville site, Henry W. Van Laarhoven ("Van Laarhoven"), negotiated and executed the agreement with Gundersen and Talaria.[2] According to Van Laarhoven, Gundersen told him during the negotiations that Talaria was a sole proprietorship. (Van Laarhoven Affidavit ¶ 6.) He states that Gundersen later informed him of the "name change" from Talaria Group to Talaria Waste Management but never mentioned its incorporation.

In 1991, Gundersen fell behind in his payments and failed to meet his minimum delivery requirements, incurring the debt that is the object of Laidlaw's counterclaim. Gundersen argues that the debt, if any, is owed exclusively by the Talaria corporation and that he, the sole shareholder and officer, is shielded from personal liability.

## II

■ Summary judgment is proper when the record, viewed in the light most favorable to the nonmovant, demonstrates no genuine dispute of a material fact. *See* Fed.R.Civ.P. 56(c). The court must "take the record in the light most hospitable to the party opposing summary judgment and indulge all reasonable inferences favorable to him." *Buenrostro v. Collazo*, 973 F.2d 39, 41 (1st Cir. 1992) (citation omitted). It is the nonmovant's burden to present specific facts that demonstrate the existence of a genuine dispute. Fed.R.Civ.P. 56(e). Specifically, "evidence which is 'merely colorable, or is not significantly probative' will not preclude summary judgment." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted)).

## III

■ On the basis of the undisputed facts, the court concludes that Gundersen is personally liable for debts incurred under the Talaria name. Two separate grounds support this conclusion.[3]

First, the uncontroverted evidence shows that Laidlaw contracted with Gundersen personally, not with a corporate entity. Though Gundersen may have intended otherwise, the impression reasonably conveyed to Laidlaw by his words and conduct controls. *See* 3 *Corbin on Contracts* § 538 (1960 & Supp. 1992) (rule that uncommunicated, secret intent of one party is not binding on the other). Laidlaw believed it was contracting with an individual and behaved accordingly.

■ Gundersen argues he entered the contract with Laidlaw not as an individual, but as a "promoter," an agent of the yet-to-

---

**1.** The corporation's existence ordinarily begins when its articles of organization are accepted and filed. Mass.Gen.Laws Ann. ch. 156B, §§ 6, 12 (West 1992).

**2.** For simplicity, "Talaria" is used here to refer to both Talaria Group and Talaria Waste Management.

**3.** Though this Court held a conference with the parties' attorneys on June 8, 1993, and expressed its intention to rule on these motions for partial summary judgment, Gundersen never filed a reply to Laidlaw's papers. Where the movant's affidavits are sufficient and unopposed, and the nonmovant has failed to move for a continuance under Fed.R.Civ.P. 56(f), it is left to the sound discretion of the court whether to proceed to the merits. *See* 6 pt. 2 James W. Moore et al., *Moore's Federal Practice*, ¶¶ 56.15[6], 56.23 (2d ed. 1993). This Court finds no excuse for Gundersen's lack of diligence and proceeds to consider the merits, based on the record as it now stands.

be-formed Talaria corporation.[4] Nevertheless, "a promoter may be personally liable for breach of a pre-incorporation contract he makes on behalf of the nonexistent corporation unless the circumstances demonstrate that the *other* party looked *only* to the corporation for performance."[5] *Productora E Importadora de Papel, S.A. de C.V. v. Fleming*, 376 Mass. 826, 836, 383 N.E.2d 1129, 1135–36 (1978) (citations omitted); *see Pamela Amusement Co. v. Scott Jewelry Co.*, 286 F.2d 497 (1st Cir.1960) (citing with approval presumption of Restatement (Second) of Agency § 326 (1958) that agent acting for nonexistent principal becomes party to contract unless agreed otherwise); *compare Mansfield v. Lang*, 293 Mass. 386, 392, 200 N.E. 110, 113 (1936) (promoter liable where other party did not intend to discharge him from liability) *with Productora, supra* (promoter not liable where other party looked to corporation alone for performance). *See generally* Southgate & Glazer, *Massachusetts Corporation Law and Practice* § 2.4 (1992). Thus, even as a promoter, Gundersen is exposed to personal liability *unless* there is evidence Laidlaw intended otherwise.

Gundersen, however, has failed to show that Laidlaw looked to Talaria exclusively, and not to him personally, for performance. At the time the contract was signed, Laidlaw did not believe Talaria was a corporation, nor did Laidlaw know that Talaria was intended to become a corporation. Laidlaw's representative, Van Laarhoven, understood the name Talaria Group, Inc., to be a "d/b/a" ("doing business as") label for Gundersen's unincorporated business.[6] (Van Laarhoven Affidavit ¶¶ 4, 6.)

■■■ After the contract was signed, Laidlaw was never informed it was dealing with a corporation. Laidlaw billed Talaria Group, Inc., and, later, at Gundersen's request, Talaria Waste Management, Inc.; yet the undisputed testimony of Van Laarhoven is that Laidlaw believed the name to be merely a "d/b/a" for a sole proprietorship. The company's name change did not alter this understanding. (Van Laarhoven Affidavit ¶¶ 8, 11.) Gundersen himself regarded the "name change" as a merely technical alteration intended to make the nature of his business more readily identifiable. (Gundersen Affidavit ¶ 3, 6.) From the facts presented, the court must conclude that Laidlaw entered into the contract with Gundersen personally and did not subsequently agree to release him from liability.[7]

4. Promoters are, in a general sense, "individuals who undertake to form a corporation and ... establish it as fully able to do its business." *Old Dominion Copper Mining & Smelting Co. v. Bigelow*, 203 Mass. 159, 177, 89 N.E. 193, 201 (1909), *aff'd*, 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009 (1912).

5. Gundersen confuses the issue by discussing the case law concerning when a corporation becomes bound by a promoter's pre-incorporation contract. The argument is irrelevant. The liability of Talaria is not presently at issue; rather, the issue is whether *Gundersen* is personally liable, and turns on whether Laidlaw looked to him personally for performance.

6. It is noted that use of the term "corporation" or "incorporated" (including any abbreviation thereof) by an unincorporated association, individual or partnership is prohibited by Massachusetts law. *See* Mass.Gen.Laws Ann. ch. 110, § 4A (West 1990). While Gundersen's use of "Inc." after the Talaria name should therefore have led Laidlaw to believe it was dealing with a corporation, Gundersen apparently asserted the contrary to Van Laarhoven, telling him Talaria was a sole proprietorship. (Van Laarhoven Affidavit ¶ 6.) In light of the evidence presented, the

Court finds it was not unreasonable for Laidlaw to have accepted Gundersen's representations.

7. Even if Laidlaw did think or later accepted that Talaria was a bona fide corporation, Gundersen would still have to show that Laidlaw did not look to him personally for performance. The liability of a promoter persists even after the corporation forms and assumes liability for the contract, "unless there is a novation or other agreement to release liability." See 1A Fletcher, *Cyclopedia of Corporations*, § 190 at 329 (1993); *see generally* 4 Corbin on Contracts § 870 (1962) (substitution of another party does not, without novation, relieve assignor of legal liability to the obligor); 6 *Corbin, supra*, § 1297 (requirements of a novation). Thus, while a novation is not required for a corporation to assume liability, see *Framingham Savings Bank v. Szabo*, 617 F.2d 897, 899 (1st Cir.1980), a novation or other formal agreement is required to release a promoter. The facts of this case do not support the existence of a novation. *See, e.g., Mansfield*, 293 Mass. at 392, 200 N.E. at 113 (party receiving paychecks from corporation did not consent to novation); *Union Mut. Life Ins. Co. v. Chrysler Corp.*, 793 F.2d 1, 12–14 (1st Cir.1986) (creditor accepting payments from third parties not sufficient to effect a novation).

Secondly, even if Laidlaw contracted with Talaria as a corporation, Gundersen is still not shielded from personal liability. Gundersen misused the corporate form and is subject to personal liability for his admitted failure to observe recognized corporate formalities and practices.[8]

The original purpose of incorporation laws was to enable stockholders to invest a reasonable amount of capital in an enterprise while insulating their uninvested assets from liability. *See* Southgate & Glazer, *supra,* § 2.8. However, courts have recognized that, in certain rare circumstances, "piercing the corporate veil" and holding shareholders and officers liable is necessary in the interests of justice. *See My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 620, 233 N.E.2d 748, 752 (1968) (approving occasional disregard of corporate fiction "in order to prevent gross inequity").

In *Pepsi–Cola Metropolitan Bottling Co. v. Checkers, Inc.,* 754 F.2d 10 (1st Cir.1985), the First Circuit recognized the rule that "shareholders may be held liable [for the debts of a corporation] where they control the operation of the corporation and run it for their personal benefit." *Id.* at 16. Finding no Massachusetts cases on point as to when to disregard the corporate form, the *Pepsi–Cola* court summarized and adopted a list of factors weighed by other courts, including, among others, (1) nonobservance of corporate formalities, (2) absence of corporate records, (3) siphoning of corporate funds by the dominant shareholders, (4) use of the corporation for transactions of the dominant shareholders, (5) inadequate capitalization, and (6) nonpayment of dividends. *Id.*

The first four *Pepsi–Cola* factors listed above are essentially admitted in Gundersen's deposition. Gundersen, the sole shareholder and officer of Talaria, admittedly used no formal bookkeeping, prepared no financial statements, filed no corporate tax returns, and received no salary. He also admitted that he paid personal expenses out of the business bank account at will. Additionally, Gundersen has not provided any affirmative

evidence of the adequate capitalization of his corporation, payment of dividends, or other indications of appropriate corporate operations. This court finds that the corporate form was a sham and does not shelter Gundersen from liability for Talaria's corporate debts.

### IV

For the foregoing reasons, the court denies counterclaim defendant Gundersen's motion and grants counterclaim plaintiff Laidlaw's cross-motion for partial summary judgment.

SO ORDERED.

---

**8.** Because Gundersen has failed to reply to Laidlaw's cross-motion for summary judgment, he has offered no opposition to Laidlaw's argument for "piercing the corporate veil." *See supra* note 3.