755 So.2d 792 (2000)
R. Robert RUGGIO and Picture Archive Communications Services, L.L.C., a Florida limited liability company, Appellants,
v.
Donald Q. VINING, Appellee.
No. 2D99-1285.
District Court of Appeal of Florida, Second District.
April 14, 2000.
*793 John F. Hooley, Naples, for Appellants.
Jeanette Martinez Lombardi of Porter, Wright, Morris & Arthur, Naples, for Appellee.
ALTENBERND, Acting Chief Judge.
R. Robert Ruggio appeals a summary final judgment in favor of Donald Q. Vining on a promissory note that Mr. Ruggio signed in his representative capacity as majority shareholder of Picture Archive Communications Services, a Florida limited liability company. The trial court determined that Mr. Ruggio was personally liable on the promissory note because the limited liability company had not yet been formed when he signed the note. We reverse and remand because the record does not resolve all material issues of fact regarding Mr. Vining's own knowledge and participation in the unformed limited liability company.
The record in this case is not extensive. Mr. Vining filed a complaint against Mr. Ruggio and Picture Archive Communications Services, L.L.C., to collect upon a $100,000 promissory note. A default judgment was entered against the limited liability company, and it is no longer an active participant in this lawsuit.
On the claim against Mr. Ruggio, the complaint alleged that Mr. Vining loaned money to the limited liability company on October 10, 1995. The complaint alleged that Mr. Ruggio signed the note on behalf of the company, representing that the limited liability company had already been formed. In fact, the limited liability company was registered with the Secretary of State of Florida on March 7, 1996. The complaint maintained that Mr. Vining did not know that the company had not been created. Thus, Mr. Vining alleged that Mr. Ruggio was personally liable for the loan.
Mr. Ruggio answered this complaint, admitting that the note existed and that the limited liability company was in default for failing to make interest payments. He affirmatively alleged, however, that Mr. Vining knew about the company's status when the note was delivered and that Mr. Vining had participated as an agent, officer, or representative of the unformed limited liability company in 1995 and 1996. Based upon these allegations, Mr. Ruggio raised three affirmative defenses, contending that Mr. Vining's claim was barred by laches, estoppel, and section 607.0204, Florida Statutes (1995).[1]
*794 The promissory note involved in this case is not a typical negotiable instrument. Mr. Vining loaned the money for a period of five years and required that the company make only annual interest payments. The provision for payment of principal upon this note is very unusual. The note stated, in part:
The holder of this note shall be entitled to issuance of 1% of all shares of stock authorized to be issued by the articles of incorporation filed in the State of Florida by the obligor of the note in lieu of payment at holder's election. Said election to be made in writing to the obligor, at the obligor's usual place of business at any time prior to the due date of this note. Such election and acceptance of shares issued shall constitute payment in full under the terms of this note.
When Mr. Vining first moved for summary judgment, he supported the motion with affidavits. On the issue of Mr. Vining's knowledge of and involvement with the company, his affidavit stated only: "At the time of the execution of the note, I was not aware that the limited liability company, Picture Archive Communications Services, had not yet been formed."
In opposition to summary judgment, Mr. Ruggio filed the affidavit of an attorney who had been involved in the creation of the company and the execution of the promissory note. The attorney claimed that he had extensive pre-incorporation dealings with Mr. Vining. During those dealings, they had discussed whether Mr. Vining should loan money to the new entity or whether he should make a contribution of equity. The attorney stated under oath: "On or about October 10, 1995, I discussed with Donald Q. Vining the fact that the corporation was not formed at the time he executed the promissory note and reminded him that he needed to determine how he wished to structure his equity position and method of repayment as to the money contributed." The attorney further claimed that no funds changed hands when the note was executed. Finally, it was the attorney's position that the formal establishment of the company was delayed by Mr. Vining's indecision about whether he wanted to have an equity position, an issue which Mr. Vining told the attorney he had discussed with an accountant.
After the opposing affidavits were filed, Mr. Vining amended his motion for summary judgment. The amended motion essentially argued that sections 608.437 and 608.409(4), Florida Statutes (1995), applied in this case and that these statutes rendered the content of the opposing affidavits irrelevant. Section 608.437 provides:
All persons who assume to act as a limited liability company without authority to do so shall be jointly and severally liable for all debts and liabilities.
Section 608.409(4), Florida Statutes (1995), provides:
A limited liability company shall not transact business or incur indebtedness, except that which is incidental to its organization or to obtaining subscriptions for or payment of contributions, until the articles of organization have been filed by the Department of State.
It is clear from the summary judgment hearing that the trial court was persuaded by this argument and entered judgment accordingly. We disagree with the trial court's conclusion because the defenses and affidavits contained in the record raise material issues of fact, notwithstanding the provisions of section 608.437.
First, assuming that any person was acting "without authority" in the transactions surrounding the inception of this limited liability company, the affidavits in opposition to summary judgment and the unorthodox terms of the promissory note call into question whether Mr. Vining himself was assuming to act as the limited liability company when negotiating this loan for the unformed limited liability company. If so, Mr. Vining would be jointly and severally liable for the obligations incurred by the as-yet unformed company under section 608.437. The amount he *795 might be entitled to collect on this company debt to himself, if any, would apparently be affected by principles of contribution. See § 46.011, Fla. Stat. (1995).
Even if Mr. Vining was not acting on behalf of the unformed company, the defenses of waiver and estoppel create questions of fact in this case. This is true, even though those defenses are not specifically incorporated into section 608.437. Section 608.437, unlike section 607.0204, Florida Statutes (1995) (a similar provision applicable to corporations), does not make an exception for liabilities to persons who share knowledge of the company's nonexistence. Admittedly, the statute would have been better drafted if it had contained the language "except for any liability to any person who also had actual knowledge that there was no organization of a limited liability company." The legislature actually added this precise language to the statute in 1999. See Ch. 99-315, Laws of Fla.; § 608.4238, Fla. Stat. (1999). The new statutory language, however, does not apply to this 1995 promissory note. Nonetheless, the traditional defenses of waiver and estoppel remain available notwithstanding the silence of section 608.437 on this issue.
The purpose of statutes like section 608.437 is to protect innocent third parties who have dealings with an entity that does not exist and never becomes adequately capitalized. See generally 1 William E. Knepper & Dan A. Bailey, Liability of Corporate Officers & Directors 218-20 (5th ed. 1993). If Mr. Vining were permitted to obtain this judgment when he had actual knowledge of the circumstances, there would be a risk that Mr. Ruggio would not have the resources to pay truly innocent third parties who lacked such knowledge. Parties, by their own knowledge and conduct, can waive or be estopped to raise a wide array of constitutional, statutory, and common law rights that do not contain any express waiver or estoppel clause. See, e.g., Stewart v. State, 491 So.2d 271, 272 (Fla.1986) (defendant waived speedy trial by requesting continuance); Independent Fire Ins. Co. v. Arvidson, 604 So.2d 854, 857-58 (Fla. 4th DCA 1992) (party to lawsuit waived right to jury trial in pretrial statement); Fiske v. Shelton, 469 So.2d 248 (Fla. 2d DCA 1985) (first partner who elected not to sue second partner for breach of contract but instead elected to receive additional partnership shares was estopped from seeking further reimbursement from second partner in lawsuit); Lipkin v. Bonita Garden Apts., Inc., 122 So.2d 623 (Fla. 3d DCA 1960) (lessee estopped from claiming lease void after occupying premises for apartment for extended period of time). Thus, there remains a genuine issue as to whether Mr. Vining is estopped or has waived his statutory claim under section 608.437.
Finally, section 608.437 should not be read in a vacuum. Section 608.409(4), Florida Statutes (1995), states that a limited liability company is not to transact business or incur indebtedness "except that which is incidental for its organization or to obtaining subscriptions for or payment of contributions until the articles of organization have been filed by the Department of State." As with traditional corporations, a promoter of a limited liability company must take steps to create a new company.[2] The very nature of a legal entity created by a formal filing with the state requires that certain actions be taken prior to incorporation.
In this case, the record does not resolve whether the execution of this unusual promissory note was "incidental" for *796 the limited liability company's organization or a "subscription" or "contribution." The attorney's affidavit alone created a question of fact as to whether Mr. Vining was making a loan or a "contribution" at the time the note was executed. See § 608.402(7), Fla. Stat. (1995). Thus, it is possible that section 608.409(4) authorized this note by Mr. Ruggio on behalf of the forming limited liability company and that section 608.437 is not dispositive. Cf. Levine v. Levine, 734 So.2d 1191, 1195-97 (Fla. 2d DCA 1999) (limiting scope of business of dissolved corporation to acts of "wind[ing] up and liquidat[ing] its business and affairs").
Reversed and remanded for further proceedings consistent with this opinion.
CASANUEVA and GREEN, JJ., Concur.
NOTES
[1] Section 607.0204, Florida Statutes (1995), provides that a person acting on behalf of a corporation while knowing the corporation is not in existence is personally liable for the liabilities thus incurred unless the liability is to a person who also knew of the corporation's nonexistence. The trial court properly determined that this statute did not apply concerning a limited liability company. To the extent counsel for Mr. Ruggio has continued to rely upon this statute in his brief on appeal, he has not assisted this court in a proper analysis of his own case. Nonetheless, his limited argument concerning the application of section 608.437, Florida Statutes (1995), a provision which is applicable to this limited liability company, is sufficient to preserve the issue on appeal.
[2] Limited liability companies were authorized by the legislature in 1993. See Ch. 93-284, Laws of Fla. The companies are a hybrid, providing the shield from personal liability found in corporations and flow-through tax advantages found in partnerships. See William H. Copperthwaite, Jr., Limited Liability Companies: The Choice for the Future, 103 Comm. L.J. 222 (1998). See also Ronald J. Klein, et al., The New Limited Liability Company in Florida, 73 Fla. B.J. 42, 43 (Aug. 1999).