# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1741

_____

Menard, Inc. a Wisconsin Corporation

*Plaintiff - Appellee*

v.

Dial-Columbus, LLC, a Nebraska limited liability company also known as Dial Columbus, LLC; DKC-Columbus, LLC, a Nebraska limited liability company

*Defendant*s

Terry L. Clauff, a Nebraska resident

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: October 7, 2014
Filed: March 26, 2015

_____

Before LOKEN, BEAM, and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

The district court granted summary judgment in favor of Menard, Inc., on its claim that Terry Clauff is jointly and severally liable for a contract he signed on behalf of DKC-Columbus, LLC, before the company came into existence. We reverse.

## I.    BACKGROUND

Menard is a Wisconsin corporation that owns and operates home improvement stores. Dial-Columbus, LLC, and DKC-Columbus are Nebraska limited liability companies (LLCs). Clauff is a member of both companies.

Menard operated a retail store in the Westgate Center in Columbus, Nebraska, in a building that it subleased (the Sublease) from Wal-Mart Stores, Inc. On August 28, 2006, Menard entered into a Purchase and Sale Agreement (the PA) with Dial-Columbus to purchase a parcel of property (the Property) that Dial-Columbus owned. Clauff signed the PA in his capacity as a managing member of Dial-Columbus. Menard planned to build a new store on the newly acquired Property and wanted to be relieved of its obligations under the Sublease once the new location opened for business. Menard and Dial-Columbus therefore incorporated a provision into the PA providing that Dial-Columbus would assume full responsibility for all terms of the Sublease thirty days after Menard opened its new store, the "Effective Date." Dial-Columbus's lease assumption responsibilities in the PA specifically included "pay[ing] any and all rents and satisfy[ing] all other obligations under" the Sublease. The PA further stated that Dial-Columbus's responsibilities "were set forth in more detail in the Lease Assignment, Consent & Release" (the Lease Assignment) that was attached as an exhibit to the PA. Dial-Columbus's name, however, appears nowhere in the Lease Assignment. The Lease Assignment instead states that DKC-Columbus sold the Property to Menard and on the stated "Effective Date" agreed to receive by assignment all of Menard's right, title and interest in and to assume all of Menard's liabilities, duties and obligations under the Sublease. The parties (and apparently the

district court) seemingly never noticed this discrepancy between the documents until it was pointed out to them at oral argument before this court, and they have provided us no explanation for why or how this discrepancy occurred.

Nonetheless, with the written consent of Wal-Mart, DKC-Columbus and Menard formally executed the Lease Assignment attached to the PA on February 12, 2007. Clauff purported to sign the Lease Assignment in his capacity as a member of DKC-Columbus. However, DKC-Columbus did not file its Articles of Organization with the Nebraska Secretary of State until October 30, 2007, and it is undisputed that the company was not a lawfully organized LLC on the date Clauff signed the Lease Assignment. See Neb. Rev. Stat. §§ 21-2605, 21-2608 (repealed 2013)[1] (providing that a limited liability company is considered organized after the company has filed its articles of organization with the Nebraska Secretary of State and has received a certificate of organization). Clauff and Menard both claim that DKC-Columbus adopted the Lease Assignment after the company formed, but neither party has provided documentary or other evidence that identifies when or how DKC-Columbus did so. Wal-Mart, as sublessor of the Westgate property and beneficiary of the Sublease obligations fully assigned by Menard to Dial-Columbus and DKC-Columbus, demanded that Menard also continue to be secondarily liable for these commitments. Menard agreed to such requirement.

Menard opened its new store in April 2008. The parties agree that thirty days later Dial-Columbus became responsible for the Sublease under the terms of the PA, and that DKC-Columbus also became similarly accountable via its obligations under the Lease Assignment. Either Dial-Columbus or DKC-Columbus paid rent to Wal-Mart for May and June of 2008; however, neither company made any rental payments

---

[1]In 2013, the Nebraska Limited Liability Company Act (Nebraska LLCA), Neb. Rev. Stat. §§ 21-2601 et seq., was repealed and replaced by the Nebraska Uniform Limited Liability Company Act (Nebraska ULLCA), Neb. Rev. Stat. §§ 21-101 et seq. The parties agree that the Nebraska LLCA is controlling in this case.

after June 2008. Both companies also failed to pay the insurance costs and taxes due under the Sublease. The Sublease expired in January 2011, at which time Dial-Columbus and DKC-Columbus jointly owed Wal-Mart more than $700,000.

As contemplated by the assignments, Wal-Mart initially sought to recover from Dial-Columbus and DKC-Columbus. Failing this, it then turned to collecting from Menard under its indemnity commitment. Menard eventually settled with Wal-Mart for $350,000. Menard then brought suit against Dial-Columbus, DKC-Columbus, and Clauff to recover that money. In its pleadings, Menard asserted several theories of recovery against each defendant, including breach of contract and contractual indemnification. All three defendants initially defaulted. However, after the clerk's entry of default, Clauff and Dial-Columbus entered an appearance, and the district court set aside the entry of default as to them. DKC-Columbus never appeared and was thus subjected to default judgment. Fed. R. Civ. P. 55(b).

Clauff and Dial-Columbus jointly filed a pleading in which they denied liability and asserted several affirmative defenses, including estoppel. They then moved to dismiss the case, but the district court denied their motion. Menard subsequently filed a motion for partial summary judgment, asking the court to enter judgment in its favor against each defendant on Menard's breach of contract and contractual indemnification theories. Dial-Columbus did not contest the motion, and the district court entered judgment against it. Clauff opposed the motion, arguing that he was not liable for the Lease Assignment because (1) the future members of DKC-Columbus authorized him to obligate the company to the contract; (2) none of the parties to the Lease Assignment intended for him to be personally liable; and (3) any liability that may have incurred was relieved or discharged after DKC-Columbus formed and adopted the Lease Assignment.

-4-

The district court ultimately granted summary judgment in favor of Menard on the grounds that Clauff was liable for the Lease Assignment under Nebraska Revised Statute § 21-2635 (repealed 2013), which provided that "[a]ll persons who assume to act as a limited liability company without authority to do so shall be jointly and severally liable for all debts and liabilities of the company." Neb. Rev. Stat. § 21-2635. The district court concluded that Clauff did not have authority to obligate DKC-Columbus to the Lease Assignment because the contract was not incidental to the company's organization and DKC-Columbus therefore lacked the capacity to authorize it. See Neb. Rev. Stat. § 21-2608(2) (stating that an unorganized LLC may only transact business or incur debt if such business or debt is incidental to the company's organization).[2] The district court further determined § 21-2635 imposed what amounted to strict liability on Clauff for this unauthorized contract because he failed to show that Menard agreed to a discharge of his liability. Clauff appeals.

## II.    DISCUSSION

"We review the district court's grant of summary judgment de novo, viewing the evidence and drawing all reasonable inferences in the light most favorable to [Clauff]." Malloy v. U.S. Postal Serv., 756 F.3d 1088, 1090 (8th Cir. 2014). We will affirm only if "there is no genuine dispute as to any material fact and [Menard] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree that

---

[2]After the district court entered summary judgment in favor of Menard, Clauff filed a motion requesting that the court alter or amend its judgment under Rule 59(e) of the Federal Rules of Civil Procedure on the grounds that the opening of Menard's new store was a condition precedent to the formation of the Lease Assignment. Clauff, however, could have raised this argument prior to entry of judgment in favor of Menard, and the district court therefore did not clearly abuse its broad discretion in denying the motion. Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998). However, the district court will be free to revisit this discretionary ruling upon remand should it choose to do so.

Nebraska law governs this dispute. Because no Nebraska appellate court has interpreted the now repealed § 21-2635, our task is to predict the manner in which the Nebraska Supreme Court would interpret the statute. Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 876 (8th Cir. 2000).

Clauff raises what we construe to be three separate arguments in opposition to the district court's holding that he is personally liable for the Lease Assignment. Clauff first contends that, because the future members of DKC-Columbus authorized him to sign the Lease Assignment on behalf of the company, his conduct was authorized for purposes of § 21-2635. Clauff next suggests that the statute does not apply to his conduct because the parties never intended for him to be personally liable for the Lease Assignment. Finally, Clauff contends that, even if he was liable under § 21-2635, DKC-Columbus relieved him from such liability by adopting the contract and commencing performance on it after the company lawfully formed.

## A.    Clauff's Authority

We begin our analysis by noting that the factual discrepancies between the PA and the Lease Assignment create some uncertainty regarding whether the parties intended to bind Dial-Columbus or DKC-Columbus to the Lease Assignment. The parties, however, represented to the district court and to this court that DKC-Columbus was the intended party to the Lease Assignment. Therefore, for purposes of summary judgment review, we will rely on the parties' representations regarding their intent, bearing in mind that future discovery may reveal that resolution of this issue is far less clear than the parties led the district court to believe.

We find no fault in the district court's conclusion that, based on the summary judgment record, Clauff was not authorized to obligate DKC-Columbus to the Lease Assignment. The Nebraska LLCA prescribed the method by which LLCs could form and prohibited an unorganized LLC from transacting business or incurring debt that

was not incidental to its organization. See Neb. Rev. Stat. §§ 21-2605, 21-2608. Viewed in conjunction with these provisions, it is clear that § 21-2635 created the prospect of liability for persons who acted as an LLC without the state having granted them authority to do so. This interpretation of the term "authority" is supported by the legislative history of § 21-2635 and is consistent with how courts have interpreted similarly-worded state statutes in Nebraska and other jurisdictions. See, e.g., Par 3, Inc. v. Livingston, 686 N.W.2d 369, 372-73 (Neb. 2004) (interpreting Neb. Rev. Stat. § 21-2020);[3] Timberline Equip. Co. v. Davenport, 514 P.2d 1109, 1110-11 (Or. 1973); Model Bus. Corp. Act § 146 cmt. (1969) (stating the authority to act as a corporation must come from the state); The Nebraska Limited Liability Company Act: Hearing on LB 121 Before the Comm. on Banking, Commerce and Ins., 1993 Leg., 93rd Sess. Jan. 26, 1993, at 11 (statement of Sen. David Landis, Member, Comm. on Banking, Commerce and Ins.). Accordingly, assuming that DKC-Columbus was actually the intended recipient of the Lease Assignment, Clauff was not authorized to obligate the company to this contract.[4] But see Par 3, 686 N.W.2d at 372-73 (defendant not liable under Neb. Rev. Stat. § 21-2020 for contract he signed in name of unincorporated business because record established that parties actually intended to bind a different, lawfully formed corporation).

---

[3]Section 21-2020, which is Nebraska's corporate analogue to § 21-2635, provides that "[a]ll persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under the Business Corporation Act, shall be jointly and severally liable for all liabilities created while so acting."

[4]However, the summary judgment record indicates that DKC-Columbus came into existence and adopted the Lease Assignment long before any debts or liabilities actually arose under the Lease Agreement. It is therefore unclear whether Menard was actually harmed in any way by Clauff's unauthorized conduct. The Nebraska Supreme Court tends to disapprove of somewhat similar unbargained for events. See Porter v. Smith, 486 N.W.2d 846, 853 (Neb. 1992).

## B.     The Parties' Intent

Clauff's arguments with respect to the relevance of the parties' intent raise murkier questions of law.  Courts that have interpreted statutes like § 21-2635 virtually all agree that the statutory language embodies a common law concept known as "promoter liability."  E.g., Ruggio v. Vining, 755 So.2d 792, 794-95 (Fla. Dist. Ct. App. 2000); Booker Custom Packing Co. v. Sallomi, 716 P.2d 1061, 1063 (Ariz. Ct. App. 1986); H.F. Philipsborn & Co. v. Suson, 322 N.E.2d 45, 48 (Ill. 1974). "A 'promoter' is a person who assumes to act on behalf of a proposed corporation that is not yet incorporated."  William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 189.  Because nonexistent corporations lack capacity to contract, promoters generally are liable for their preincorporation agreements though made on behalf of a corporation to be formed.  Id. at § 215.

As an initial matter, the district court correctly rejected Clauff's argument that his conduct fell outside the purview of § 21-2635 merely because the parties did not affirmatively intend that he be personally liable for the Lease Assignment.  "The purpose of statutes like [21-2635] is to protect innocent third parties who have dealings with an entity that does not exist and never becomes adequately capitalized." Ruggio, 755 So.2d at 795; see W. Sec. Corp. v. Eternal Techs. Group, Inc., 303 F. App'x 173, 174 (5th Cir. 2008) (citing with approval to Ruggio).  We would likely strike a fatal blow to the primary aim of § 21-2635 were we to conclude that the statute applied only in circumstances where the third party to the contract actually knew it was dealing with a promoter.  Rather, case law strongly supports the district court's conclusion that statutes like § 21-2635 impose liability on promoters for their preincorporation contracts unless the third party knows it is dealing with a promoter and agrees to look solely to the proposed company for performance.  E.g., Talaria Waste Mgmt., Inc. v. Laidlaw Waste Sys., Inc., 827 F. Supp. 843, 846 (D. Mass. 1993); Sherwood & Roberts-Oregon, Inc. v. Alexander, 525 P.2d 135, 137-39 (Or. 1974).  Accordingly, assuming the parties intended for DKC-Columbus to receive

assignment of the Sublease, Clauff cannot escape the reach of § 21-2635 merely because the parties did not intend for him to be personally liable.

The district court gave short shrift, however, to Clauff's alternative argument that his liability for the Lease Assignment was relieved after DKC-Columbus formed, adopted the contract, and commenced performance on it. The district court correctly noted that, when faced with fact patterns like the one before us, several courts have defaulted to principles of novation and concluded that a corporation's adoption of a promoter's contract does not relieve the promoter from liability unless the parties formally agree to a release. E.g., Talaria Waste Mgmt., 827 F. Supp. at 846 n.7; Jacobson v. Stern, 605 P.2d 198, 201 (Nev. 1980). However, numerous courts have refused to strictly apply novation principles to promoter contracts in circumstances where doing so would override the parties' intent and seemingly grant to the third party an unexpected and unnecessary windfall. Norfolk S. Ry. Co. v. Jacobs, 549 F. Supp. 2d 990, 999-1000 (N.D. Ohio 2008) (promoter's liability relieved if corporation forms, adopts the preincorporation contract, and commences performance on it); GS Petroleum, Inc. v. R and S Fuel, Inc., No. 07C-09-023 RRC, 2009 WL 1554680, at *3-4 (Del. Super. Ct. June 4, 2009); Suson, 322 N.E.2d at 48-50 (no liability based on state law principles of contract and equity).

It is a bit unclear why the district court did not take a more inclusive look at Nebraska's common law of promoter liability in interpreting § 21-2635. "It is a recognized rule of construction that statutes which effect a change in the common law or take away a common-law right should be strictly construed . . . a construction which restricts or removes a common-law right should not be adopted unless the plain words of the act compel it." Knosp v. Shafer Props., LLC, 820 N.W.2d 68, 74 (Neb. App. 2012). Furthermore, "[i]n construing [the plain words of] a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute." Guzman v. Barth, 552 N.W.2d 299, 301

(Neb. 1996). These principles of statutory construction suggest that, if Clauff's defense was available under the common law, then § 21-2635 should be construed as eliminating this defense only if the plain words and the purpose of the statute compel this result. Id.; Knosp, 820 N.W.2d at 74.

Although not dispositive, several cases suggest that the Nebraska Supreme Court has been hesitant to hold promoters liable on their preincorporation contracts when it is clear the parties intended to bind the corporation to the agreement, particularly in circumstances where the corporation itself is ultimately held liable on the contract. E.g., Henderson v. Joplin, 217 N.W.2d 920, 924 (Neb. 1974); Am. Gas Const. Co. v. Lisco, 241 N.W. 89, 90 (Neb. 1932); Neb. Nat'l Bank of York v. Ferguson, 68 N.W. 370, 371-72 (Neb. 1896); accord Whitney v. Wyman, 101 U.S. 392, 397 (1879) (plaintiff estopped to deny corporation's nonexistence because corporation later came into existence and treated contract as valid and binding upon it); Forker Solar, Inc. v. Knoblauch, 396 N.W.2d 273, 279 (Neb. 1986) ("A person who contracts with a corporation is estopped from later denying its corporate existence."). Clauff's defense that he was relieved of liability once DKC-Columbus came into existence, adopted the contract, and commenced performance on it therefore may be viable under the Nebraska common law. Lisco, 241 N.W. at 90; Ferguson, 68 N.W. at 371-72; accord Jacobs, 549 F. Supp. 2d at 1000; Suson, 322 N.E.2d at 48-50.

Assuming the possibility that the parties and the district court may not have given sufficient consideration to whether the language and the purpose of § 21-2635 compel a finding that the statute abrogated Clauff's common law defenses, we suggest a closer look. Guzman, 552 N.W.2d at 302; Knosp, 820 N.W.2d at 74. Indeed, although § 21-2635 clearly defined how a promoter became liable on a preincorporation contract, it was silent with respect to how a promoter could be relieved of or avoid liability for the agreement. Compare Talaria Waste Mgmt., 827 F. Supp. at 846 n.7 (promoter must obtain express release); with Suson, 322 N.E.2d

at 48-50 (liability relieved by express release or by adoption of contract by corporation); and Ruggio, 755 So.2d at 795 (permitting defendant to raise traditional equitable defenses to promoter liability). In addition, as the district court noted, § 21-2635 is intended to protect parties that are victimized by unauthorized corporate activity. We therefore find some merit in the cases holding that the normally rigid novation rules should be relaxed in circumstances where the corporation forms and adopts the contract because the third party presumably receives "everything for which it had bargained" and can hardly be labeled a victim.[5] Suson, 322 N.E.2d at 49; see also Jacobs, 549 F. Supp. 2d at 1000.

Given the complexity of these legal issues and the potential for factual deficiencies in the summary judgment record noted above, we conclude that our best course of action is to leave to the district court the question of whether the Nebraska common law[6] and/or § 21-2635 preclude Clauff's argument that his liability under the Lease Assignment may be relieved or avoided because DKC-Columbus came into existence, adopted the contract, and commenced performance on it.

---

[5]Clauff pled an estoppel defense, and the parties' representations to this court suggest that they have viewed the potential availability of a corporation by estoppel defense as a live issue throughout the course of these proceedings. However, because the summary judgment record is unclear regarding the extent Clauff brought this issue to the district court's attention, we leave to Clauff the burden of articulating to the district court the basis of his estoppel defense.

[6]We note that subsequent to the district court's grant of summary judgment, the Nebraska Supreme Court recognized that Neb. Rev. Stat. § 21-2020, which is the corporate analogue to § 21-2635, did not abolish the common law defense of de facto corporation. In re Estate of Greb, 848 N.W.2d 611, 620-21 (Neb. 2014). Although not directly on point, Greb certainly suggests that the Nebraska Supreme Court would reject the argument that Nebraska's promoter liability statutes abolished the common law legal and equitable defenses to promoter liability. Accord Suson, 322 N.E.2d at 48.

-11-

## III. CONCLUSION

The district court's grant of summary judgment in favor of Menard is reversed and remanded for further proceedings consistent with this opinion.

COLLOTON, Circuit Judge, dissenting.

In my view, the district court correctly applied the terms of Revised Statutes of Nebraska § 21-2635 (2012), and properly rejected the arguments that Terry Clauff presented in the district court. The language of the statute is clear: "All persons who assume to act as a limited liability company without authority to do so shall be jointly and severally liable for all debts and liabilities of the company." *Id.* Clauff purported to sign a lease assignment on behalf of a limited liability company, DKC-Columbus, that was not yet organized. Clauff had no authority to do so, *see* Neb. Rev. Stat. § 21-2608(2) (2012), and he is therefore jointly and severally liable for the resulting liabilities of DKC-Columbus.

The court's curious opinion reverses the judgment in favor of Menard, Inc., and remands the case to the district court for further consideration without identifying any error in the analysis of the district court. Instead, the court remands for consideration of two matters that were never presented to or addressed by the district court. It has been well settled heretofore that we will not reverse a grant of summary judgment based on arguments that were not raised in response to the motion. *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013).

The court thinks it is a "bit unclear why the district court did not take a more inclusive look at Nebraska's common law of promoter liability in interpreting § 21-2635." *Ante*, at 9. The reason is perfectly clear: Clauff never argued in response to Menard's motion for summary judgment that a common law defense such as "corporation by estoppel" precluded application of the statute. The summary

-12-

judgment record is not "unclear regarding the extent Clauff brought this issue to the district court's attention," *ante*, at 11 n.5; Clauff never mentioned it.  Even if the boilerplate reference to "waiver, laches and/or estoppel" in Clauff's answer, R. Doc. 21, at 7, is enough to plead adequately a defense of "corporation by estoppel" under Nebraska law, a defendant does not preserve a defense by pleading it but then declining to advance it in response to the opponent's dispositive motion.  The district court understandably did not address the point, and it is too late for Clauff to raise a new defense to the motion for summary judgment for the first time on appeal.

The court, moreover, overstates the significance of *First Nebraska Trust Co. v. Greb (In re Estate of Greb)*, 848 N.W.2d 611 (Neb. 2014), when it opines by way of a footnote—without briefing or argument—that *Greb* "certainly suggests that the Nebraska Supreme Court would reject the argument that Nebraska's promoter liability statutes abolished the common law legal and equitable defenses to promoter liability."  *Ante*, at 11 n.6.  *Greb* holds that the Business Corporation Act did not abolish the de facto corporation doctrine in Nebraska in a case "where, unbeknownst to its directors and officers, a lawful corporation was involuntarily dissolved."  848 N.W.2d at 621.  *Greb* does not address promoter liability; if anything, it implies that the de facto corporation defense is *unavailable* in that context because the Business Corporation Act governs:  "Although the act *contains sections* governing the commencement of corporate existence and *imposing liability upon persons purporting to act as or on behalf of a corporation with knowledge that no incorporation has taken place*, these provisions do not address *all* of the issues responsible for the development of the [de facto corporation] doctrine."  *Id*. (emphases added) (footnotes omitted).  One issue *un*addressed by the Business Corporation Act was the effect of an involuntary corporate dissolution unknown to the corporate directors and officers, so the de facto corporation doctrine was available in that scenario.  Because § 21-2635 does contain sections imposing liability on persons purporting to act as or on behalf of a limited liability company without authority to do so, there is good reason to believe that the Nebraska court would

follow the terms of the statute. *See Thompson & Green Mach. Co. v. Music City Lumber Co.*, 683 S.W.2d 340, 345 (Tenn. Ct. App. 1984) (applying Tennessee equivalent of § 21-2635 for corporations); *Wheat Belt Pub. Power Dist. v. Batterman*, 452 N.W.2d 49, 51 (Neb. 1990) ("[T]he liability of one party to a contract may not be substituted for the liability of another unless the parties to the original contract agree to the discharge of the original debtor and substitution of a new one.").

The court's other stated reason for remanding is a reference to "factual discrepancies" that "create some uncertainty" about whether DKC-Columbus or Dial-Columbus was the purported party to the Lease Assignment that Clauff signed with Menard. *Ante*, at 6, 11. This theory, too, was never raised in the district court or even on appeal. Clauff acknowledged repeatedly that he purported to sign the Lease Assignment on behalf of DKC-Columbus. R. Doc. 56, at 3 ("Clauff . . . executed the Lease Assignment on behalf of DKC as a member."); *id.* at 11 ("[T]he Lease Assignment expressly showed Clauff as signing as a member of DKC."); R. Doc. 57-1, at 1 ("I . . . executed the Lease Assignment on behalf of DKC.") (declaration of Terry L. Clauff); Appellant's Br. at 5 ("Clauff personally negotiated the Lease Assignment with Menard on behalf of DKC-Columbus, and executed the Lease Assignment on behalf of DKC-Columbus as a member."). If the written papers were not enough, Clauff's counsel reaffirmed the point at oral argument:

> Question: Have you ever argued, in the district court or in this court, that the Lease Assignment was executed by Clauff on behalf of Dial-Columbus?
>
> Counsel for Clauff: It has never been argued that the Lease Assignment specifically was signed on behalf of Dial-Columbus.

-14-

The district court correctly applied § 21-2635 and rejected the points that Clauff raised in response to Menard's motion for summary judgment. There is no sound reason for a do-over. I would affirm the judgment.

_____