BEAM, Circuit Judge.
The district court granted summary judgment in favor of Menard, Inc., on its claim that Terry Clauff is jointly and severally liable for a contract he signed on behalf of DKC-Columbus, LLC, before the company came into existence. We reverse.
I. BACKGROUND
Menard is a Wisconsin corporation that owns and operates home improvement stores. Dial-Columbus, LLC, and DKC-Columbus are Nebraska limited liability companies (LLCs). Clauff is a member of both companies.
Menard operated a retail store in the Westgate Center in Columbus, Nebraska, in a building that it subleased (the Sublease) from Wal-Mart Stores, Inc. On August 28, 2006, Menard entered into a Purchase and Sale Agreement (the PA) with Dial-Columbus to purchase a parcel of property (the Property) that Dial-Columbus owned. Clauff signed the PA in his capacity as a managing member of Dial-Columbus. Menard planned to build a new store on the newly acquired Property and wanted to be relieved of its obligations under the Sublease once the new location opened for business. Menard and Dial-Columbus therefore incorporated a provision into the PA providing that Dial-Columbus would assume full responsibility for all terms of the Sublease thirty days after Menard opened its new store, the “Effective Date.” Dial-Columbus’s lease assumption responsibilities in the PA specifically included “payfing] any and all rents and satisfying] all other obligations under” the Sublease. The PA further stated that Dial-Columbus’s responsibilities “were set forth in more detail in the Lease Assignment, Consent & Release” (the Lease Assignment) that was attached as an exhibit to the PA. Dial-Columbus’s name, however, appears nowhere in the Lease Assignment. The Lease Assignment instead states that DKC-Columbus sold the Property to Menard and on the stated “Effective Date” agreed to receive by assignment all of Menard’s right, title and interest in and to assume all of Me-nard’s liabilities, duties and obligations under the Sublease. The parties (and apparently the district court) seemingly never noticed this discrepancy between the documents until it was pointed out to them at oral argument before this court, and they have provided us no explanation for why or how this discrepancy occurred.
Nonetheless, with the written consent of Wal-Mart, DKC-Columbus and Menard formally executed the Lease Assignment attached to the PA on February 12, 2007. Clauff purported to sign the Lease Assignment in his capacity as a member of DKC-Columbus. However, DKC-Columbus did not file its Articles of Organization with the Nebraska Secretary of State until Oc- *996 ■ tober 30, 2007, and it is undisputed that the company was not a lawfully organized LLC on the date Clauff signed the Lease Assignment. See Neb.Rev.Stat. §§ 21-2605, 21-2608 (repealed 2013)[1] (providing that a limited liability company is considered organized after the company has filed its articles of organization with the Nebraska Secretary of State and has received a certificate of organization). Clauff and Menard both claim that DKC-Columbus adopted the Lease Assignment after the company formed, but neither party has provided documentary or other evidence that identifies when or how DKC-Columbus did so. Wal-Mart, as sublessor of the Westgate property and beneficiary of the Sublease obligations fully assigned by Me-nard to Dial-Columbus and DKC-Columbus, demanded that Menard also continue to be secondarily liable for these commitments. Menard agreed to such requirement.
Menard opened its new store in April 2008. The parties agree that thirty days later Dial-Columbus became responsible for the Sublease under the terms of the PA, and that DKC-Columbus also became similarly accountable via its obligations under the Lease Assignment. Either Dial-Columbus or DKC-Columbus paid rent to Wal-Mart for May and June of 2008; however, neither company made any rental payments after June 2008. Both companies also failed to pay the insurance costs and taxes due under the Sublease. The Sublease expired in January 2011, at which time Dial-Columbus and DKC-Columbus jointly owed Wal-Mart more than $700,000.
As contemplated by the assignments, Wal-Mart initially sought to recover from Dial-Columbus and DKC-Columbus. Failing this, it then turned to collecting from Menard under its indemnity commitment. Menard eventually settled with Wal-Mart for $350,000. Menard then brought suit against Dial-Columbus, DKC-Columbus, and Clauff to recover that money. In its pleadings, Menard asserted several theories of recovery against each defendant, including breach of contract and contractual indemnification. All three defendants initially defaulted. However, after the clerk’s entry of default, Clauff and Dial-Columbus entered an appearance, and the district court set aside the entry of default as to them. DKC-Columbus never appeared and was thus subjected to default judgment. Fed. R.Civ.P. 55(b).
Clauff and Dial-Columbus jointly filed a pleading in which they denied liability and asserted several affirmative defenses, including estoppel. They then moved to dismiss the case, but the district court denied their motion. Menard subsequently filed a motion for partial summary judgment, asking the court to enter judgment in its favor against each defendant on Menard’s breach of contract and contractual indemnification theories. Dial-Columbus did not contest the motion, and the district court entered judgment against it. Clauff opposed the motion, arguing that he was not liable for the Lease Assignment because (1) the future members of DKC-Columbus authorized him to obligate the company to the contract; (2) none of the parties to the Lease Assignment intended for him to be personally liable; and (3) any liability that may have incurred was relieved or discharged after DKC-Columbus formed and adopted the Lease Assignment.
*997 The district court ultimately granted summary judgment in favor of Menard on the grounds that Clauff was liable for the Lease Assignment under Nebraska Revised Statute § 21-2635 (repealed 2013), which provided that “[a]ll persons who assume to act as a limited liability company without authority to do so shall be jointly and severally liable for all debts and liabilities of the company.” Neb.Rev.Stat. § 21-2635. The district court concluded that Clauff did not have authority to obligate DKC-Columbus to the Lease Assignment because the contract was not incidental to the company’s organization and DKC-Columbus therefore lacked the capacity to authorize it. See Neb.Rev.Stat. § 21-2608(2) (stating that an unorganized LLC may only transact business or incur debt if such business or debt is incidental to the company’s organization).[2] The district court further determined § 21-2635 imposed what amounted to strict liability on Clauff for this unauthorized contract because he failed to show that Menard agreed to a discharge of his liability. Clauff appeals.
II. DISCUSSION
“We review the district court’s grant of summary judgment de novo, viewing the evidence and drawing all reasonable inferences in the light most favorable to [Clauff].” Malloy v. U.S. Postal Serv., 756 F.3d 1088, 1090 (8th Cir.2014). We will affirm only if “there is no genuine dispute as to any material fact and [Menard] is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a). The parties agree that Nebraska law governs this dispute. Because no Nebraska appellate court has interpreted the now repealed § 21-2635, our task is to predict the manner in which the Nebraska Supreme Court would interpret the statute. Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 876 (8th Cir.2000).
Clauff raises what we construe to be three separate arguments in opposition to the district court’s holding that he is personally liable for the Lease Assignment. Clauff first contends that, because the future members of DKC-Columbus authorized him to sign the Lease Assignment on behalf of the company, his conduct was authorized for purposes of § 21-2635. Clauff next suggests that the statute does not apply to his conduct because the par-tiés never intended for him-to be personally liable for the Lease Assignment. Finally, Clauff contends that, even if he was liable under § 21-2635, DKC-Columbus relieved him from such liability by adopting the contract and commencing performance on it after the company lawfully formed.
A. Clauff s Authority
We begin our analysis by noting that the factual discrepancies between the PA and the Lease Assignment create some uncertainty regarding whether the parties intended to bind Dial-Columbus or DKC-Columbus to the Lease Assignment. The parties, however, represented to the district court and to this court that DKC- *998 Columbus was the intended party to the Lease Assignment. Therefore, for purposes of summary judgment review, we will rely on the parties’ representations regarding their intent, bearing in mind that future discovery may reveal that resolution of this issue is far less clear than the parties led the district court to believe.
We find no fault in the district court’s conclusion that, based on the summary judgment record, Clauff was not authorized to obligate DKC-Columbus to the Lease Assignment. The Nebraska LLCA prescribed the method by which LLCs could form and prohibited an unorganized LLC from transacting business or incurring debt that was not incidental to its organization. See Neb.Rev.Stat. §§ 21-2605, 21-2608. Viewed in conjunction with these provisions, it is clear that § 21-2635 created the prospect of liability for persons who acted as an LLC without the state having granted them authority to do so. This interpretation of the term “authority” is supported by the legislative history of § 21-2635 and is consistent with how courts have interpreted similarly-worded state statutes in Nebraska and other jurisdictions. See, e.g., Par 3, Inc. v. Livingston, 268 Neb. 636, 686 N.W.2d 369, 372-73 (2004) (interpreting Neb.Rev.Stat. § 21-2020);[3] Timberline Equip. Co. v. Davenport, 267 Or. 64, 514 P.2d 1109, 1110-11 (1973); Model Bus. Corp. Act § 146 cmt. (1969) (stating the authority to act as a corporation must come from the state); The Nebraska Limited Liability Company Act: Hearing on LB 121 Before the Comm, on Banking, Commerce and Ins., 1993 Leg., 93rd Sess. Jan. 26,1993, at 11 (statement of Sen. David Landis, Member, Comm, on Banking, Commerce and Ins.). Accordingly, assuming that DKC-Columbus was actually the intended recipient of the Lease Assignment, Clauff was not authorized to obligate the company to this contract.[4] But see Par 3, 686 N.W.2d at 372-73 (defendant not liable under Neb. Rev.Stat. § 21-2020 for contract he signed in name of unincorporated business because record established that parties actually intended to bind a different, lawfully formed corporation).
B. The Parties’ Intent
Clauffs arguments with respect to the relevance of the parties’ intent raise murkier questions of law. Courts that have interpreted statutes like § 21-2635 virtually all agree that the statutory language embodies a common law concept known as “promoter liability.” E.g., Ruggio v. Vining, 755 So.2d 792, 794-95 (Fla.Dist.Ct. App.2000); Booker Custom Packing Co. v. Sallomi, 149 Ariz. 124, 716 P.2d 1061, 1063 (1986); H.F. Philipsborn & Co. v. Suson, 59 Ill.2d 465, 322 N.E.2d 45, 48 (1974). “A ‘promoter’ is a person who assumes to act on behalf of a proposed corporation that is not yet incorporated.” William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 189. Because nonexistent corporations lack capacity to contract, promoters generally are liable for their preincorporation agreements though made *999 on behalf of a corporation to be formed. Id. at § 215.
As an initial matter, the district court correctly rejected Clauffs argument that his conduct fell outside the purview of § 21-2635 merely because the parties did not affirmatively intend that he be personally liable for the Lease Assignment. “The purpose of statutes like [21-2635] is to protect innocent third parties who have dealings with an entity that does not exist and never becomes adequately capitalized.” Ruggio, 755 So.2d at 795; see W. Sec. Corp. v. Eternal Techs. Group, Inc., 303 Fed.Appx. 173, 174 (5th Cir.2008) (citing with approval to Ruggio). We would likely strike a fatal blow to the primary aim of § 21-2635 were we to conclude that the statute applied only in circumstances where the third party to the contract actually knew it was dealing with a promoter. Rather, case law strongly supports the district court’s conclusion that statutes like § 21-2635 impose liability on promoters for their preincorporation contracts unless the third party knows it is dealing with a promoter and agrees to look solely to the proposed company for performance. E.g., Talaria Waste Mgmt., Inc. v. Laidlaw Waste Sys., Inc., 827 F.Supp. 843, 846 (D.Mass.1993); Sherwood & Roberts-Oregon, Inc. v. Alexander, 269 Or. 389, 525 P.2d 135, 137-39 (1974). Accordingly, assuming the parties intended for DKC-Columbus to receive assignment of the Sublease, Clauff cannot escape the reach of § 21-2635 merely because the parties did not intend for him to be personally liable.
The district court gave short shrift, however, to Clauffs alternative argument that his liability for the Lease Assignment was relieved after DKC-Columbus formed, adopted the contract, and commenced performance on it. The district court correctly noted that, when faced with fact patterns like the one before us, several courts have defaulted to principles of novation and concluded that a corporation’s adoption of a promoter’s contract does not relieve the promoter from liability unless the parties formally agree to a release. E.g., Talaria Waste Mgmt., 827 F.Supp. at 846 n. 7; Jacobson v. Stern, 96 Nev. 56, 605 P.2d 198, 201 (1980). However, numerous courts have refused to strictly apply novation principles to promoter contracts in circumstances where doing so would override the parties’ intent and seemingly grant to the third party an unexpected and unnecessary windfall. Norfolk S. Ry. Co. v. Jacobs, 549 F.Supp.2d 990, 999-1000 (N.D.Ohio 2008) (promoter’s liability relieved if corporation forms, adopts the preincorporation contract, and commences performance on it); GS Petroleum, Inc. v. R and S Fuel, Inc., No. 07C-09-023 RRC, 2009 WL 1554680, at *3-4 (Del.Super.Ct. June 4, 2009); Suson, 322 N.E.2d at 48-50 (no liability based on state law principles of contract and equity).
It is a bit unclear why the district court did not take a more inclusive look at Nebraska’s common law of promoter liability in interpreting § 21-2685. “It is a recognized rule of construction that statutes which effect a change in the common law or take away a common-law right should be strictly construed ... a construction which restricts or removes a common-law right should not be adopted unless the plain words of the act compel it.” Knosp v. Shafer Props., LLC, 19 Neb. App. 809, 820 N.W.2d 68, 74 (2012). Furthermore, “[i]n construing [the plain words of] a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute.” Guzman v. Barth, 250 Neb. 763, 552 N.W.2d 299, 301 (1996). These principles of statu *1000 tory construction suggest that, if Clauffs defense was available under the common law, then § 21-2635 should be construed as eliminating this defense only if the plain words and the purpose of the statute compel this result. Id.; Knosp, 820 N.W.2d at 74.
Although not dispositive, several cases suggest that the Nebraska Supreme Court has been hesitant to hold promoters liable on their preincorporation contracts when it is clear the parties intended to bind the corporation to the agreement, particularly in circumstances where the corporation itself is ultimately held liable on the contract. E.g., Henderson v. Joplin, 191 Neb. 827, 217 N.W.2d 920, 924 (1974); Am. Gas Const. Co. v. Lisco, 122 Neb. 607, 241 N.W. 89, 90 (1932); Neb. Nat’l Bank of York v. Ferguson, 49 Neb. 109, 68 N.W. 370, 371-72 (1896); accord Whitney v. Wyman, 101 U.S. 392, 397, 25 L.Ed. 1050 (1879) (plaintiff estopped to deny corporation’s nonexistence because corporation later came into existence and treated contract as valid and binding upon it); Forker Solar, Inc. v. Knoblauch, 224 Neb. 143, 396 N.W.2d 273, 279 (1986) (“A person who contracts with a corporation is estopped from later denying its corporate existence.”). Clauffs defense that he was relieved of liability once DKC-Columbus came into existence, adopted the contract, and commenced performance on it therefore may be viable under the Nebraska common law. Lisco, 241 N.W. at 90; Ferguson, 68 N.W. at 371-72; accord Jacobs, 549 F.Supp.2d at 1000; Suson, 322 N.E.2d at 48-50.
Assuming the possibility that the parties and the district court may not have given sufficient consideration to whether the language and the purpose of § 21-2635 compel a finding that the statute abrogated Clauffs common law defenses, we suggest a closer look. Guzman, 552 N.W.2d at 302; Knosp, 820 N.W.2d at 74. Indeed, although § 21-2635 clearly defined how a promoter became liable on a preincorporation contract, it was silent with respect to how a promoter could be relieved of or avoid liability for the agreement. Compare Talaría Waste Mgmt., 827 F.Supp. at 846 n. 7 (promoter must obtain express release); with Suson, 322 N.E.2d at 48-50 (liability relieved by express release or by adoption of contract by corporation); and Ruggio, 755 So.2d at 795 (permitting defendant to raise traditional equitable defenses' to promoter liability). In addition, as the district court noted, § 21-2635 is intended to protect parties that are victimized by unauthorized corporate activity. We therefore find some merit in the cases holding that the normally rigid novation rules should be relaxed in circumstances where the corporation forms and adopts the contract because the third party presumably receives “everything for which it had bargained” and can hardly be labeled a victim.[5] Suson, 322 N.E.2d at 49; see also Jacobs, 549 F.Supp.2d at 1000.
Given the complexity of these legal issues and the potential for factual deficiencies in the summary judgment record noted above, we conclude that our best course of action is to leave to the district court the question of whether the Nebraska common law[6] and/or § 21-2635 preclude Clauffs *1001 argument that his liability under the Lease Assignment may be relieved or avoided because DKC-Columbus came into existence, adopted the contract, and commenced performance on it.
III. CONCLUSION
The district court’s grant of summary judgment in favor of Menard is reversed and remanded for further proceedings consistent with this opinion.

. In 2013, the Nebraska Limited Liability Company Act (Nebraska LLCA), Neb.Rev. Stat. §§ 21-2601 et seq., was repealed and replaced by the Nebraska Uniform Limited Liability Company Act (Nebraska ULLCA), Neb.Rev.Stat. §§ 21-101 et seq. The parties agree that the Nebraska LLCA is controlling in this case.

. After the district court entered summary judgment in favor of Menard, Clauff filed a motion requesting that the court alter or amend its judgment under Rule 59(e) of the Federal Rules of Civil Procedure on the grounds that the opening of Menard’s new store was a condition precedent to the formation of the Lease Assignment. Clauff, however, could have raised this argument prior to entiy of judgment in favor of Menard, and the district court therefore did not clearly abuse its broad discretion in denying the motion. Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir.1998). However, the district court will be free to revisit this discretionary ruling upon remand should it choose to do so.

. Section 21-2020, which is Nebraska’s corporate analogue to § 21-2635, provides that "[a]ll persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under the Business Corporation Act, shall be jointly and severally liable for all liabilities created while so acting.”

. However, the summary judgment record indicates that DKC-Columbus came into existence and adopted the Lease Assignment long before any debts or liabilities actually arose under the Lease Agreement. It is therefore unclear whether Menard was actually harmed in any way by Clauffs unauthorized conduct. The Nebraska Supreme Court tends to disapprove of somewhat similar unbargained for events. See Porter v. Smith, 240 Neb. 928, 486 N.W.2d 846, 853 (1992).

. Clauff pled an estoppel defense, and the parties’ representations to this court suggest that they have viewed the potential availability of a corporation by estoppel defense as a live issue throughout the course of these proceedings. However, because the summary judgment record is unclear regarding the extent Clauff brought this issue to the district court's attention, we leave to Clauff the burden of articulating to the district court the basis of his estoppel defense.

. We note that subsequent to the district court’s grant of summary judgment, the Nebraska Supreme Court recognized that Neb. *1001 Rev.Stat. § 21-2020, which is the corporate analogue to § 21-2635, did not abolish the common law defense of de facto corporation. In re Estate of Greb, 288 Neb. 362, 848 N.W.2d 611, 620-21 (2014). Although not directly on point, Greb certainly suggests that the Nebraska Supreme Court would reject the argument that Nebraska’s promoter liability statutes abolished the common law legal and equitable defenses to promoter liability. Accord Suson, 322 N.E.2d at 48.